[No. 3979–II.   Division Two.   June 2, 1980.]

THE STATE OF WASHINGTON, *Respondent*, v. MIAKO
STEPHEN LIKAKUR, *Appellant.*

*Cynthia Wills* of *Seattle–King County Public Defender Association*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Dennis R. Nollette, Deputy*, for respondent.

PETRICH, J.—Defendant was charged with the crime of rape in the first degree while armed with a deadly weapon. At bench trial he was adjudged guilty of the lesser included offense of second-degree rape, the judge declining to make a finding that he was armed with a deadly weapon. Defendant appeals. His attorney on appeal did not represent him at trial. In his sole assignment of error defendant contends that the court failed to adequately determine defendant's competence to waive his right to a jury trial in violation of the due process clause of the fourteenth amendment to the United States Constitution and article 1, section 22 of the Washington State Constitution. We affirm.

Defendant, a Canadian Indian, had been living with his brother in Seattle for about 5 months prior to the incident which resulted in his arrest and ultimate conviction. Late one evening in a Seattle tavern, the victim and her companion became acquainted with defendant, his brother and other friends. After the tavern closed the group moved on to the apartment of defendant and his brother, and more alcoholic beverages were consumed. The group dwindled in size until there remained only the victim, defendant and his brother. Eventually defendant and the victim engaged in sexual intercourse. The victim claimed that excessive force and threatened use of a deadly weapon by defendant made her an unwilling participant. Defendant on the other hand claimed that the victim precipitated the affair and was the initial aggressor. The ultimate decision depended on which of the opposing witnesses was more credible. Testifying on behalf of the State was the victim, her companion and the arresting police officer who was called to the scene. The defense witnesses consisted of defendant and his mother.[1]

Several weeks prior to trial a psychiatrist was appointed by the court to examine and evaluate defendant's mental condition. The appointment was requested by defendant's attorney because of what he perceived to be signs of mental

---

[1] On cross-examination defendant admitted three prior criminal convictions in Canada which included possession of stolen property and robbery.

disturbance evidenced by defendant's various discussions and writings in which he referred to a "constitution for the galaxy." The psychiatrist reviewed various writings, interviewed defendant and submitted a written report in which he observed that defendant was an Indian activist; and that his writings tended to reflect his political bias and assume the "'mystical' aura which is much a part of Indian rhetoric these days." The report concluded with the opinion that defendant knew what he was charged with; knew the consequences of a conviction; was able to assist his attorney; and was competent to stand trial.

At the beginning of the trial, defense counsel advised the court that a written waiver of a jury trial had been prepared for defendant, and that he believed defendant understood his rights. Prior to submitting the waiver, he then invited the court to determine the defendant's competency to stand trial. Defense counsel advised the court that he had reached no conclusion one way or another, but suggested the competency hearing because various discussions with defendant, coupled with his writings, raised some questions as to his mental competency. A sample of defendant's writing was then filed with the court. He further stated that he had no trouble working with defendant on the case.

The court conducted a brief hearing during which the psychiatrist's report was admitted in evidence followed by a short colloquy with defendant. The defendant reaffirmed his written waiver of a jury trial. Also discussed were the defendant's recent travels, his work, his acknowledgment that he was aware of the nature of the charges, and that he was well enough to proceed with the trial. The court concluded that defendant was competent to stand trial and thereafter accepted and approved the written waiver of the jury trial.

Defendant acknowledges that the right to a jury trial, like other constitutional rights of the accused, may be waived so long as the waiver is intelligently and voluntarily made. *State v. Forza*, 70 Wn.2d 69, 422 P.2d 475 (1966). He

contends, however, that where the issue of the accused's ability to intelligently and voluntarily waive such a right is raised, its validity is conditioned on the trial court's determination, after an appropriate and independent inquiry, that the accused had the requisite understanding and capacity to make such a waiver. Absent such an inquiry and determination, defendant contends the waiver is ineffective. *Westbrook v. Arizona,* 384 U.S. 150, 16 L. Ed. 2d 429, 86 S. Ct. 1320 (1966); *United States v. David,* 511 F.2d 355 (D.C. Cir. 1975); *Sieling v. Eyman,* 478 F.2d 211 (9th Cir. 1973); *State v. Kolocotronis,* 73 Wn.2d 92, 436 P.2d 774 (1968); *Little v. Rhay,* 8 Wn. App. 725, 509 P.2d 92 (1973). We conclude that the authorities cited by defendant are not applicable to the instant case.

The record fails to disclose any facts or circumstances which initially raise the issue of defendant's capacity to waive his right to a jury trial. The cases relied on by defendant, with but one exception, clearly establish that the issue was raised. In *State v. Kolocotronis, supra,* the court permitted the assistance of counsel on the issue of insanity over defendant's objection that he was thereby denied his constitutional right to act as his own counsel. The record disclosed that, although the sanity commission did ultimately determine defendant to be competent to stand trial, it originally concluded defendant was not sane and was unable to aid in his defense, with one member concluding he was psychotic. Furthermore, Kolocotronis had previously been committed to a mental institution 12 times over an 8-year period. These circumstances obviously raised the issue of defendant's capacity to waive his right to counsel and the court correctly insisted on counsel's participation over defendant's objection. In *Sieling v. Eyman, supra,* the court invalidated an Arizona judgment on a guilty plea to three counts of assault. The sanity commission, consisting of three doctors, expressed the view that defendant was insane at the time of commission of the offense, while two of the three members believed he was competent to stand trial. The court, having determined

that defendant was capable of standing trial, accepted a guilty plea without first determining whether he was capable of waiving his constitutional rights to a trial. In *United States v. David, supra,* the court reversed a conviction and remanded for a new trial, where the trial court neglected to make a determination after appropriate inquiry that a waiver of a jury trial was intelligently and voluntarily made. In that case there was initially a difference of opinion between the doctors as to defendant's competency to stand trial, which was later resolved. Nevertheless, the court held that evidence of prior psychosis and hospitalization for such condition; the original disagreement among the doctors; and defense counsel's persistently expressed concerns of defendant's capacity to be tried and to waive a jury, clearly put in issue defendant's capacity to waive a jury trial. *Little v. Rhay, supra,* did not deal with the question of defendant's capacity to waive his right to a jury trial, but whether in fact defendant waived such a right.

In the instant case there is no history of psychiatric disorders or unusual behavior. There is no conflict of "experts" as to his sanity. The only expert opinion before the court was that defendant was competent. His trial counsel apparently had no difficulty dealing with his client and simply expressed the thought that a "question" of defendant's capacity is raised even though he had not reached a conclusion one way or another.

Defendant apparently contends that his writings sufficiently raise the issue of his capacity to waive his right to a jury trial. Included in the appendix to his brief is a writing apparently authored by himself. However, this writing is not part of the record before us, and bears a date several weeks after the trial. Matters not of record will not be considered by the court. *State v. Blight,* 89 Wn.2d 38, 569 P.2d 1129 (1977); *Falcone v. Perry,* 68 Wn.2d 909, 416 P.2d 690 (1966); *State v. Armstead,* 13 Wn. App. 59, 533 P.2d 147 (1975); *State v. Williams,* 9 Wn. App. 663, 513

P.2d 1045 (1973). We have, however, reviewed the "Application for Writ of Certiorari" which is part of the record and was filed with the trial court the day of the trial.

This document attempts to articulate defendant's various constitutional rights as an accused, as well as claiming the complaining witness' charges are unfounded. It closes with a paragraph not unlike a passage from a poorly composed science fiction novel. This document by itself may display a personality who enjoys the use of words for show, with little regard for meaning, but does not raise the issue of his sanity or ability to waive his right to a jury.

The opinion in *Westbrook v. Arizona, supra,* unlike most of the other cases cited by defendant, does not refer to prior mental illness or aberrant behavior of the accused. An examination of the opinion of the Supreme Court of Arizona, which was reversed, also is silent as to defendant's prior condition or behavior.[2] Nevertheless, the court reversed a first–degree murder conviction where the death penalty was imposed because of the lower court's failure to make an independent inquiry and determination that the accused was competent to conduct his own defense and thus voluntarily and intelligently waived his right to counsel. This ruling, however, must be confined to the particular waiver which the court addressed. It does not stand for the proposition that each time a waiver of a constitutional right is proposed, an independent inquiry and determination of capacity of the accused is mandated.

We believe that the various constitutional rights of the accused are accorded different procedural safeguards depending on the nature of the right itself and the circumstances of each case. A guilty plea amounts to a waiver of the entire arsenal of the accused's constitutional rights.

---

[2]The 3–member sanity commission unanimously agreed the accused was able to assist in his own defense and was competent to stand trial. With this as a basis, the court found him sane and competent to stand trial. *State v. Westbrook,* 99 Ariz. 30, 406 P.2d 388 (1965).

Because of this, the acceptance of such a plea must be preceded by appropriate safeguards to determine that the plea is made intelligently and freely. The right to counsel is also a right to be guarded carefully. The ordinary layman would effectively be denied his right to a fair trial, which right embodies many other constitutional rights, without the assistance of counsel. He lacks both the skill and knowledge to adequately prepare and present his defense even though he has a perfect one. The determination of whether there has been an appropriate waiver must depend in each case on the particular facts and circumstances including the experience and capabilities of the accused. *Johnson v. Zerbst*, 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019, 146 A.L.R. 357 (1938). At a different level are the right to jury trial, the right to remain silent, and the right to confront witnesses. The trial strategy of any particular case may perhaps dictate the waiver of one or more of these rights while still preserving to the accused the right to a fair trial.

In the instant case sound trial strategy may have preferred the submission of the accused's prior criminal record to the court as the trier of fact rather than to a jury. It would be an undue interference with the orderly process of a criminal trial, if not a denial of due process, to require an independent hearing and determination of defendant's capacity to waive each constitutional right he enjoys. Such a rule would require a hearing to determine whether a particular witness would be cross-examined or not, and the extent of the cross-examination; and whether defendant should take the stand in his own defense. It is obvious in this case that defendant recognized the difference in treatment of various constitutional rights. Defendant took the stand, and does not now complain that the court had the inherent duty to interrupt the trial, conduct a hearing, and then decide whether or not he was capable of waiving his right to remain silent. Similarly, defendant does not now complain that the court should have made a similar inquiry

when defendant, by consenting to the admission of a medical report, waived his right to have the examining psychiatrist appear and testify as to his findings and conclusions subject to cross–examination by the defendant. To impose such a rule would frustrate and impair the orderly process of a fair trial.

In view of the informal manner in which the issue of defendant's competency to stand trial was suggested following a psychiatric report of his competency, and the absence of any history or other evidence of mental illness, we hold that the trial court was not obliged to delve any further into the defendant's capacity to waive his right to a jury trial.

The judgment is affirmed.

PEARSON, A.C.J., and PETRIE, J., concur.

Reconsideration by Court of Appeals pending June 10, 1981.