[Nos. 19079-2-I; 23349-1-I.  Division One.  October 23, 1989.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM CHARLES BRAND, *Appellant.*

*In the Matter of the Personal Restraint of* WILLIAM CHARLES BRAND, *Petitioner.*

*Anna–Mari Sarkanen* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Katharine B. Wilcox, Deputy,* for respondent.

FORREST, J.—William Charles Brand (Brand) appeals from his conviction of second degree murder for shooting his wife, Jacqueline Brand (Jackie). Brand's appeal and personal restraint petition have been consolidated. Brand contends that: (1) the record does not affirmatively show a knowing and voluntary waiver of his right to a jury; (2) the evidence is insufficient to support his conviction; (3) the court erroneously admitted lay opinion evidence; (4) he was not afforded an evidentiary hearing on his competency to stand trial; (5) his due process rights were violated at sentencing; (6) he did not receive a fair trial because the prosecutor is also a mental health expert; (7) the prosecutor made improper comments in his closing arguments; and (8) he has discovered new evidence that requires he be granted a new trial. We affirm the conviction and dismiss the restraint petition.

After a lengthy relationship, the Brands were married on April 23, 1982. Brand had enjoyed enormous financial success in Alaska, but by early 1985, was financially distressed. His credit was overdrawn, his rent and bills were overdue, and his trust account was depleted. Jackie was not made aware of their dire financial condition.

In January or February of 1985, Brand changed the beneficiary of his $500,000 life insurance policy from Jackie to his three daughters from a previous marriage. Brand also prepared a will that named Charles Baillargeon as executor, directed the executor to "abide by the wishes of family with

respect to the disposition of the body of my wife", and stated "[i]nasmuch as my wife has died with me, I direct that she shall be conclusively deemed not to have survived me."

On February 21, Brand mailed an envelope to Baillargeon that contained a copy of Brand's will, some insurance documents, a document entitled "Comments to the Executor," and a 10-page narrative entitled "Bill and Jackie." The narrative chronicled Brand's and Jackie's lives from 1967 to 1979, including Brand's descriptions of Jackie's alleged sexual liaisons with other men. Brand also mailed copies of the "Bill and Jackie" narrative to friends and family members.

Baillargeon received the envelope on February 22, 1985. He immediately attempted to contact Brand, but was unsuccessful. Baillargeon contacted a longtime friend of Brand's, who went to the Brands' apartment. No one responded, despite signs that the apartment was occupied, so the police were called.

The police officers entered the Brands' apartment after they observed Brand staggering and crawling. They found Jackie's body lying in the hallway covered with a quilt. Brand was standing near the dining room table, and he staggered when the officers asked him to leave the apartment. The officers also noted a cocked revolver on the coffee table.

Following Brand's removal from the apartment, the officers found empty and partially empty bottles of scotch in the kitchen, approximately a dozen love notes in the kitchen and master bedroom, and a calendar with the following entry on February 21, 1985: "Jackie passed away at 1310 hours." A 1985 desk calendar seized from Brand's office contained the following notation on January 17, 1985: "loaded revolver."

After being advised of his rights, Brand made numerous, spontaneous inculpatory statements. He stated that he had "shot the most beautiful woman in the world," and that he "murdered [his] wife about 24 hours ago." Brand, who

appeared very subdued and sad, also indicated that he was quite disturbed about his home being invaded, and he asked the officers why he was at the station.

A Breathalyzer test administered 90 minutes after the arrest showed that Brand had a blood alcohol level of .19. After the test, Brand told the officers that "I shot her about 24 hours ago, and I have been drinking ever since." Brand also stated that the gun he used was on the table and that there were three rounds left. Between the inculpatory remarks, Brand talked about the Seahawks.

Brand was charged by information with first degree murder. Six psychologists and psychiatrists examined Brand between arraignment and trial for the purpose of determining whether insanity or diminished capacity were potential defenses. Eventually, Brand filed a "Notice of Intent to Rely on Insanity/Diminished Capacity Defense." Brand waived his right to a jury trial, both in open court and by filing a written waiver.

Brand called two psychiatrists, Drs. Joan Hampson and John Petrich, on his behalf. Dr. Hampson testified that Brand met most of the diagnostic criteria for major depressive disorder and for narcissistic personality disorder. She opined that Brand's ability to premeditate the intent to kill his wife or to form wrongful criminal intent was diminished by his mental illness. Hampson explained that despite the clear evidence that Brand had planned for both his and Jackie's deaths, Brand's illness caused him to make those plans and rendered him unable to understand that his actions were wrong.

Dr. Petrich also testified that Brand suffers from a major depressive disorder and from narcissistic personality disorder. Petrich acknowledged the "incontrovertible evidence of planning" and the existence of a motive, but he opined that Brand's ability to premeditate the intent to kill his wife or to form the intent to kill his wife was markedly diminished as a result of his mental illness.

During Dr. Petrich's testimony, the prosecutor asked that Brand's attorney either stipulate to Brand's competency to

stand trial or that Dr. Petrich testify regarding Brand's competency because "of the frequent recesses we have had, apparently because of the defendant's emotional state." Brand's attorney was willing to stipulate that Brand was competent when the trial began, but he stated that he did not know whether Brand continued to be competent. The trial court accepted the stipulation, and proceeded with the trial. During cross examination, Dr. Petrich opined that Brand was presently competent to stand trial.

The State's rebuttal witness, Dr. Kathleen Mayers of Western State Hospital, concluded that Brand did not suffer from a disorder of psychotic proportions, but that he exhibited alcohol dependency, an adjustment disorder with depressed mood, and a narcissistic personality disorder. She opined that Brand was fully competent to stand trial,[1] was not criminally insane at the time of the offense, and was capable of premeditating and forming criminal intent at the time of the offense.

At the conclusion of the evidence, the trial judge found Brand not guilty of first degree murder because the State did not prove beyond a reasonable doubt that Brand premeditated Jackie's murder. The judge found Brand guilty of second degree murder.

### JURY WAIVER

At the beginning of trial, Brand, his attorney and the court engaged in a colloquy in which Brand indicated his desire to waive his right to a jury trial.[2] Brand, his attorney, and the trial judge also signed a written waiver of jury trial.

---

[1] In her written report dated November 1, 1985, Mayers stated:
"Mr. Brand was aware of the nature of the charges against him and of their seriousness. He stated he has a high degree of confidence in his attorney and that he sees no reason why he should not receive a fair trial. *He was well aware of the role of the prosecutor, judge, and jury.* When asked if he had any doubts about his own competency, Mr. Brand said that he had no doubts." (Italics ours.)

[2] The colloquy is contained in the appendix.

The constitutional right to a jury trial,[3] like other constitutional rights, may be waived.[4] To meet constitutional muster, the record must affirmatively show that the defendant knew of the right to a jury trial and personally and expressly waived it.[5] These requirements are implemented by CrR 6.1(a), which requires a written waiver of a defendant's right to a jury trial. A similar requirement is provided in the Fed. R. Crim. P. 23(a).[6] In this case, not only was a written waiver filed, but (1) Brand's counsel stated in court that Brand was waiving a jury trial, (2) Brand orally waived a jury trial, and significantly (3) Brand stated that he had discussed the matter "to his satisfaction" with his attorney.

To date, no Washington case has required more than a written waiver. The claim that an extended colloquy on the record is required for jury waiver has been rejected each time it has been presented.[7] We find the reasoning in *State v. Likakur*, 26 Wn. App. 297, 302–03, 613 P.2d 156 (1980), persuasive:

> We believe that the various constitutional rights of the accused are accorded different procedural safeguards depending on the nature of the right itself and the circumstances of each case. A guilty plea amounts to a waiver of the entire arsenal of the accused's constitutional rights. Because of this, the acceptance of such a plea must be preceded by appropriate safeguards to determine that the plea is made intelligently and

---

[3]U.S. Const. amends. 6, 14; Const. art. 1, §§ 21, 22.

[4]*State v. Forza*, 70 Wn.2d 69, 422 P.2d 475 (1966); *State v. Wiley*, 26 Wn. App. 422, 613 P.2d 549 (1980); *State v. Likakur*, 26 Wn. App. 297, 613 P.2d 156 (1980); *State v. Harper*, 33 Wn. App. 507, 655 P.2d 1199 (1982); *State v. Downs*, 36 Wn. App. 143, 672 P.2d 416 (1983), *review denied*, 100 Wn.2d 1040 (1984).

[5]*State v. Wicke*, 91 Wn.2d 638, 591 P.2d 452 (1979); *Seattle v. Crumrine*, 98 Wn.2d 62, 653 P.2d 605 (1982); *Seattle v. Williams*, 101 Wn.2d 445, 680 P.2d 1051 (1984); *Bellevue v. Acrey*, 103 Wn.2d 203, 691 P.2d 957 (1984).

[6]"Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing".

[7]*State v. Harper, supra; State v. Likakur, supra; State v. Wiley, supra; State v. Downs, supra.*

freely. The right to counsel is also a right to be guarded carefully. The ordinary layman would effectively be denied his right to a fair trial, which right embodies many other constitutional rights, without the assistance of counsel. He lacks both the skill and knowledge to adequately prepare and present his defense even though he has a perfect one. The determination of whether there has been an appropriate waiver must depend in each case on the particular facts and circumstances including the experience and capabilities of the accused. *Johnson v. Zerbst,* 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019, 146 A.L.R. 357 (1938). At a different level are the right to jury trial, the right to remain silent, and the right to confront witnesses. The trial strategy of any particular case may perhaps dictate the waiver of one or more of these rights while still preserving to the accused the right to a fair trial.

Implicitly recognizing that no Washington case requires an extended colloquy with the defendant as to a waiver of jury trial, Brand asserts that three cases: *State v. Jones,*[8] *State v. Hahn*[9] and *United States v. David;*[10] require an extended colloquy given the facts in this case. We do not agree.

Neither *Jones* nor *Hahn* deals with a jury waiver. *Jones* deals with a mentally ill defendant's right to forgo a not guilty by reason of insanity (NGI) plea and *Hahn* involves a waiver of the defendant's right to counsel. The different considerations applying to different constitutional rights, as discussed in *Likakur,* are reflected in the different treatment provided in the criminal rules. *Compare* CrR 6.1(a), which requires only a written waiver of jury trial *with* CrR 4.1(c), which spells out in considerable detail the requirements for a waiver of counsel *and* with CrR 4.2(g), which contains elaborate procedures as a condition to accepting a plea of guilty.

While rarely if ever would a waiver of counsel be in a defendant's best interest, competent defendants and experienced counsel may have good reasons to waive a jury,

---

[8]99 Wn.2d 735, 664 P.2d 1216 (1983).

[9]106 Wn.2d 885, 726 P.2d 25 (1986).

[10]511 F.2d 355 (D.C. Cir. 1975).

believing that their defense would be better understood and evaluated by a judge than by jurors who may be less sympathetic to technical legal contentions.

In both *Jones* and *Hahn,* the defendants had been diagnosed as paranoid schizophrenics, although by the time of trial they were found to be competent. *Jones* holds that a competent defendant is entitled to decide what plea he should enter and specifically that the judge cannot decide to enter an NGI plea over the defendant's objection. The court stated that the judge's inquiry should be directed to explaining the ramifications of an NGI plea when such a plea might be appropriate. In emphasizing a defendant's right to make the decision, *Jones* supports the waiver in this case rather than militates against it. *Hahn* sustained a waiver of the right to counsel, emphasizing even a mentally ill defendant's right to make his own decisions. The discussion as to the proper method of evaluating a mentally ill defendant's decision is irrelevant to the problem before us in the absence of a showing that Brand was mentally ill *at the time of trial.*

*David* is the only case cited that reverses a trial judge for failure to sufficiently inquire into a jury waiver. Following his arrest, David was found to be incompetent and to have a substantial psychiatric history. He was then committed to a mental hospital for further evaluation. Ultimately, he was returned to court for trial. At the outset, the court found him competent. His attorney then asked the judge to inquire directly as to the jury waiver. It is against this backdrop that the judge's brief inquiry was held insufficient. This case stands out as a very unusual holding.[11] The psychiatric history and the original finding of incompetency make it clearly distinguishable from the facts at bar, and we do not find it persuasive.

---

[11]*See, e.g., United States v. Anderson,* 704 F.2d 117, 119 (3d Cir.), *cert. denied,* 464 U.S. 838 (1983); *United States v. Martin,* 704 F.2d 267, 271 (6th Cir. 1983); *United States v. Scott,* 583 F.2d 362 (7th Cir. 1978).

In contrast to the defendants' mental condition in *Jones, Hahn,* and *David,* the issue of competency to stand trial was never raised by Brand prior to or during the jury waiver. During the 11 months between arrest and trial, Brand was examined by six mental health experts, mostly at his own request. Neither Brand's original court–appointed attorney, nor his subsequent privately retained attorney, ever raised an issue of competency to stand trial. After the jury waiver, both Brand's witness, Dr. Petrich, and the State's witness, Dr. Mayers, stated that Brand knew the charges against him and was able to assist the counsel in his own defense. In addition, in a written report Dr. Mayers said, "he was well aware of the role of the prosecutor, judge and jury." When asked if he had any doubts about his own competency, Brand said that he had "no doubts."

Although a written waiver does not conclusively show that a defendant validly waived a jury trial,[12] it can be regarded as strong evidence of the validity of the waiver. So, too, can the statement in court of Brand's experienced defense counsel and Brand's own statement in court.[13] There is nothing in the record suggesting that Brand was incompetent prior to or at the time of the waiver of the jury trial. If competent, he is entitled to make his own decision in consultation with his attorney as to whether to waive his right to a jury trial.

The court and prosecutor should be entitled to rely on a defendant's written waiver in compliance with the rule. While a case may arise in which the facts before the court generate a duty to engage in a more extensive colloquy than the one present here, this is not such a case. There is no showing that any further inquiry would have resulted in a different decision. The result of the trial suggests that it

---

[12]*State v. Downs,* 36 Wn. App. 143, 144, 672 P.2d 416 (1983), *review denied,* 100 Wn.2d 1040 (1984).

[13]*State v. Hicks,* 41 Wn. App. 303, 307, 704 P.2d 1206 (1985).

was a wise decision indeed since a jury might well have found premeditation. We find no facts suggesting, much less requiring, that the trial judge should have conducted a further inquiry as to Brand's decision to waive a jury trial.

The judgment and sentence are affirmed, and the personal restraint petition is dismissed.

The remainder of this opinion has no precedential value and thus will not be published except for the dissent. *See* RCW 2.06.040; CAR 14.

## APPENDIX

THE COURT: Thank you. Are there any preliminary matters?

MR. BROWNE: The matter regarding the jury waiver, I should—I am not sure if you have met Dina LaFave, a member of the Bar and a member of my office, who will be assisting me in the trial.

Ms. LaFave and I met with Mr. Brand this morning and discussed the waiver of the jury in this matter.

We have been contemplating this for weeks, but obviously until the events of this morning, we found out what judge we got assigned to, there was an issue I needed to talk to him about. We spent more time talking to him about it. I am confident he understands his right to be tried by a jury, and I am sure he is voluntarily and knowingly giving up that right.

THE COURT: Very well. Would you stand, sir? Would you state your name?

THE DEFENDANT: William Charles Brand.

THE COURT: Mr. Brand, your attorney is John Henry Browne. That's correct, isn't it?

THE DEFENDANT: That's correct, sir.

THE COURT: Have you had any opportunity to discuss with Mr. Browne the right that you have in this matter to have a trial by jury?

THE DEFENDANT: Yes, sir.

THE COURT: And have you discussed fully with him that right?

THE DEFENDANT: Well, I don't know. What do you mean by fully? But to my satisfaction.

THE COURT: All right. That you do have a right to a jury trial?

THE DEFENDANT: Yes, sir.

THE COURT: All right. And is it your desire at this time to waive that right and have this case tried by myself, a judge?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have any questions whatsoever about that decision, or do you wish to have any more time to discuss that decision with your attorney before you make this decision?

THE DEFENDANT: No. I don't think so.

THE COURT: And is it your desire to—again, to have it tried by a judge?

THE DEFENDANT: By Judge Bates.

THE COURT: Myself.

THE DEFENDANT: Yes, sir.

THE COURT: Very well. Thank you.

The waiver of jury trial by jury of the defendant is entered at this time. I find that it was knowingly and voluntarily made.

COLEMAN, C.J., concurs.

WINSOR, J. (dissenting)—I dissent from the majority holding concluding that Brand knowingly, intelligently and voluntarily waived his right to jury trial.

Based on Brand's written waiver, as well as his own and his counsel's statement in court, the majority holds that Brand knowingly, intelligently and voluntarily waived his right to jury trial. This conclusion does not follow from the record of the proceedings for three reasons: (1) the trial judge did not take the minimal steps necessary to ensure that Brand understood his right to jury trial; (2) the judge could not have intelligently consented to acceptance of the waiver, pursuant to CrR 6.1(a); and (3) given that the question of Brand's mental capacity had arisen, the judge failed to make a sufficient inquiry on that matter prior to accepting waiver.

A criminal defendant's right to a jury trial is fundamental. *Duncan v. Louisiana,* 391 U.S. 145, 149, 20 L. Ed. 2d 491, 88 S. Ct. 1444 (1968). Waiver of the right to a trial by jury by an accused must be knowing, intelligent and voluntary. *State v. Forza,* 70 Wn.2d 69, 70–71, 422 P.2d 475 (1966). In order to preserve the right to jury trial, courts should indulge every reasonable presumption against waiver, absent an adequate record to the contrary. *Seattle v. Williams,* 101 Wn.2d 445, 451, 680 P.2d 1051 (1984); *State v. Wicke,* 91 Wn.2d 638, 645, 591 P.2d 452 (1979).

Because waiver is an "intentional relinquishment or abandonment of a known right", *Johnson v. Zerbst,* 304 U.S. 458, 464, 82 L. Ed. 1461, 58 S. Ct. 1019, 146 A.L.R. 357 (1938), it is axiomatic that the defendant must first understand the guaranties included in that right before he can effectively waive it. Yet, that is exactly what is missing from the record in this case—evidence that Brand understood the critical differences between a jury trial and a bench trial.

Some federal circuit courts have adopted rules either advising or mandating district courts to provide information to defendants on the record to help ensure that defendants understand the basic mechanics of a jury trial before deciding whether to waive that right. *E.g., United States v. Cochran,* 770 F.2d 850, 853 (9th Cir. 1985); *United States v. Martin,* 704 F.2d 267, 275 (6th Cir. 1983); *United States v. Delgado,* 635 F.2d 889, 890 (7th Cir. 1981). District courts in those circuits must or should inform defendants that (1) 12 members of the community compose a jury; (2) the defendant may take part in jury selection; (3) jury verdicts must be unanimous; and (4) the judge alone decides guilt or innocence if the defendant waives a jury trial. *Cochran,* 770 F.2d at 853; *Martin,* 704 F.2d at 274–75; *Delgado,* 635 F.2d at 890.

We ought to require no less. By providing this information, either orally or in written form, the trial judge will be better able to discern whether the defendant understands the full ramifications of the waiver of his constitutional right to jury trial. Further, if the judge does not verify that the defendant understands this distinction, either through an oral inquiry or a written waiver form, then the record does not support a finding of knowing, intelligent and voluntary waiver of this right. *See State v. Downs,* 36 Wn. App. 143, 145, 672 P.2d 416 (1983) (purpose behind written waiver requirement of CrR 6.1(a) is to ensure that waiver is knowing, intelligent and voluntary), *review denied,* 100

Wn.2d 1040 (1984); *State v. Bray*, 23 Wn. App. 117, 122, 594 P.2d 1363 (1979).[14]

Moreover, CrR 6.1(a) expressly requires that a defendant's written waiver have the "consent of the court." Surely, the record therefore must show evidence of knowing, intelligent and voluntary waiver to enable a judge to intelligently consent to acceptance of that waiver. The judge in this case had no evidence from which he could conclude that Brand knew of the critical differences between judge and jury trials.[15] Thus he had no basis for concluding that Brand had knowingly, intelligently and voluntarily waived his right.

The trial judge also failed to conduct a sufficient inquiry of Brand's capacity to effectively waive a constitutional right. Generally, a judge's determination of whether a waiver is knowing, intelligent and voluntary depends on all the facts and circumstances surrounding the case, including the experience and capabilities of the accused. *Johnson,* 304 U.S. at 464; *Downs,* 36 Wn. App. at 145. In *Downs,* the court denied a challenge to the adequacy of a jury waiver, stating that "absent circumstances that initially raise a question regarding the defendant's capacity to waive a jury trial, the trial court need not conduct an independent inquiry on that issue prior to accepting waiver." 36 Wn.

---

[14]It would be a simple matter to create a written waiver form that includes such a provision. The Whatcom County Superior Court utilizes a standard form containing language substantially similar to the following:

I, the undersigned Defendant, am aware of the following matters concerning waiver of my right to a jury trial:

1. Under the Constitution of the United States and the State of Washington, the statutes of the State of Washington, and the Criminal Rules for Superior Court, I am entitled to a trial by a jury of my fellow citizens who would determine my guilt or innocence.

2. In a jury trial, the State must convince all of the twelve citizens of my guilt beyond a reasonable doubt. In a trial by judge, the State must only convince the judge beyond a reasonable doubt.

[15]For instance, Brand may have believed that a simple majority (7-to-5) vote of a jury would have been sufficient to convict. If so, waiver would not have seemed to be significant.

App. at 145 (citing *State v. Likakur*, 26 Wn. App. 297, 300–01, 613 P.2d 156 (1980)). But the converse of this statement is also true: when circumstances *are* presented that raise a question regarding capacity to waive a jury trial, the trial court must conduct an independent inquiry prior to accepting the waiver. *Cf. State v. Kolocotronis*, 73 Wn.2d 92, 102, 436 P.2d 774 (1968).

In this case, such circumstances were presented. As the majority points out, the record before the trial judge showed that Brand had been examined by mental health professionals six times while in jail awaiting trial. The judge also knew that Brand's defense at trial would be diminished capacity at the time of the crime. While it is true that no one asserted that Brand was incompetent to stand trial, the judge had enough information on his mental state to warrant an independent inquiry and caution in accepting a waiver of a constitutional right.

The record contains no evidence that Brand knowingly, intelligently and voluntarily waived his right to jury trial, nor did the trial judge effectively consent to acceptance of the waiver. The trial judge also failed to make a sufficient inquiry into Brand's capacity. Accordingly, I would remand to the trial court for evidentiary hearing as to whether Brand's waiver was knowing, intelligent and voluntary.

Review denied at 114 Wn.2d 1002 (1990).