[No. 25247-0-I.   Division One.   December 20, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. GARY LUND, *Appellant*.

---

*Suzanne Lee Elliott* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Pamela Mohr, Deputy,* for respondent.

KENNEDY, J. — Appellant Gary Lund appeals his conviction of custodial interference in the first degree. Lund asserts that the trial court erred in accepting his waiver of his right to a jury trial. Lund also asserts that the trial court erred in finding him guilty of custodial interference without making a finding of fact as to an element of the crime, namely, intent to deny his wife Tracie access to their child Damadora. We affirm.

I

In July 1987, appellant Gary Lund and his wife Tracie had a son, Damadora Prasada Lund. On September 24, 1988, the Lunds separated and in November 1988, Tracie Lund filed a petition for dissolution of their marriage.

Disputes arose over the care and custody of Damadora. On December 13, 1988, a temporary parenting plan was entered prohibiting either parent from removing Damadora from Washington without approval of the court or the other parent. The order also directed that Damadora reside with his mother, except for specified weekends and holidays to be spent with Gary Lund.

On January 1, 1989, Gary Lund picked up Damadora for a visitation which was to end at 6:30 p.m. that evening. Lund failed to return Damadora as scheduled and he failed to contact Tracie Lund with regard to the whereabouts of father and son. On January 16, 1989, Lund contacted Tracie Lund through his brother, Michael Lund, and said that he would meet her in Los Angeles. Lund testified that the purpose of the meeting was to reconcile their marriage.

On January 27, 1989, the State filed an information charging Lund with custodial interference in the first degree. Lund was arrested in Laguna Beach, California, and was extradited to Washington for trial. The matter was set for a jury trial on September 28, 1989. On the day of trial, however, after a colloquy with his attorney and the trial judge, Lund signed a written waiver, waiving his right to a jury trial. After a bench trial, the trial judge found Lund guilty of custodial interference in the first degree. The court entered the following pertinent findings of fact:

II.

Tracie Lund had lawful custody of her child, Damadora P. Lund, during that time period pursuant to a Temporary Parenting Plan entered by the court on December 13, 1988. Washington State is the State of usual residence for the child.

. . . .

IV.

Defendant took the child out of the State of usual residence by taking the child to California. This was in direct violation of the court's Order [of] December 13, 1988 prohibiting either parent from removing the child from the State. Thus, the defendant had no lawful authority to take the child out of the State.

V.

The defendant intended to keep the child for a protracted period of time.

### VI.

The defendant was sincerely concerned for the health, welfare and safety of his child.

### VII.

However, the child was used as "bait" to get defendant's estranged wife to go to California to reconcile their marriage.

### VIII.

The child was not in imminent physical danger at the time of the taking.

Lund appeals his conviction.

## II

### A. Waiver of Jury Trial

Lund first asserts that the trial court erred in finding that he voluntarily, knowingly and intelligently waived his right to a jury trial. Lund contends that the trial court failed to engage in an adequate colloquy with him after he expressed reluctance and hesitation about waiving this right.

On the day of trial, Lund, his counsel and the court engaged in the following colloquy:

THE COURT: The matter was scheduled for a jury trial assigned to this department for trial this morning on one count I believe of custodial interference in the first degree. Counsel and defendant having appeared here, it has been indicated to me that there may be a waiver of jury trial and the matter will be tried to the bench.

Miss Spector, is that your client's desire[?]

MS. SPECTOR: It is, your Honor. I have discussed this matter with Mr. Lund at length prior to being assigned out and as well as when we were assigned a specific court. It is his desire at this time to waive his constitutional right to a trial by jury of twelve.

I would ask the Court to inquire and go through the standard colloquy regarding that waiver with Mr. Lund.

THE COURT: Have you completed a jury waiver form? Would you fill that out, please[?]

MS. SPECTOR: Your Honor, if I may approach the bench, I will hand up the waiver.

THE COURT: Mr. Lund, you have had a chance to discuss this with Miss Spector, I take it.

A: Yes, I have.

THE COURT: You have discussed the issue of whether or not to have a jury trial. Do you know what a jury trial is[?]

THE DEFENDANT: Yes.

THE COURT: How much education do you have, Mr. Lund[?]

THE DEFENDANT: One year in college.

THE COURT: All right. Have you ever been through a criminal jury trial before[?]

THE DEFENDANT: No, I haven't.

THE COURT: You understand that a jury is twelve people who will be selected from the voter list of this state and those twelve people will be selected by your attorney and State's attorney after asking questions of those jurors and determining something about them and we would end up with twelve jurors that were selected in that manner. Do you understand that[?]

THE DEFENDANT: Yes.

THE COURT: Then they would decide the factual issue as to whether or not the facts that the State has presented, whether or not those facts constitute the crime based on the law as I would give it to them. You understand that[?]

THE DEFENDANT: Yes.

THE COURT: However, if you waive jury trial, instead of a jury and you will have no jury, I simply will hear the facts as the State presents them and I will make a decision as to whether or not the State has proven its case beyond a reasonable doubt. You understand that[?]

THE DEFENDANT: Yes.

THE COURT: If I do that, it's solely me; and once I make that decision, you have no right to appeal from the decision I make on the facts. The only right of appeal you would have would be if I make a legal error. Do you understand that[?]

THE DEFENDANT: That is one point I wasn't aware of. Okay.

THE COURT: You have the same right of appeal as you would have if you went to a jury trial and by that, you would not have a right to appeal a jury's decision either in terms of their making a factual finding. I am just saying if I make that factual finding, you still don't have any right to appeal my factual decision as to what happened. You understand that?

THE DEFENDANT: Yes.

THE COURT: You would still retain as you would in a jury trial the right to appeal any legal errors that you and your attorney assert were made. You understand that?

THE DEFENDANT: Yes, I do.

THE COURT: And this jury waiver, if I sign that this morning and authorize this waiver, it's irrevocable. You can't change your mind between now and lunch time or during the trial or after you are tried; and if you are convicted, after your sentence you can't change your mind and say now I wish I had a jury trial.

> If I rule against you on the facts, you may well feel you could have done better with a jury. If you feel that way, it would be too late to change your mind. You understand that[?]

THE DEFENDANT: Yes. I have got a second reservation.

THE COURT: Now, you want to take a moment and discuss it with Miss Spector, you are welcome to.

(Whereupon, a discussion was held off the record.)

THE DEFENDANT: I waive the jury.

THE COURT: Mr. Lund, you have now had another couple minutes to discuss it with Miss Spector. Do you still wish to waive a jury[?]

THE DEFENDANT: Yes.

THE COURT: Okay. All right. I will find then that the waiver of this jury trial is knowingly and voluntarily made.

Lund, his counsel, and the trial judge also signed a written waiver of jury trial.

■■ The constitutional right to a trial by jury[1] may be waived. *Bellevue v. Acrey*, 103 Wn.2d 203, 207, 691 P.2d 957 (1984); *State v. Brand*, 55 Wn. App. 780, 785, 780 P.2d 894 (1989). "A waiver of that right must be voluntary, knowing, and intelligent." *Bellevue*, 103 Wn.2d at 207 (citing *State v. Forza*, 70 Wn.2d 69, 422 P.2d 475 (1966)). CrR 6.1(a)[2] implements a defendant's right to waive a jury trial by requiring that a waiver of a jury trial must be in writing. *See State v. Wicke*, 91 Wn.2d 638, 642, 591 P.2d 452 (1979) (noting that "[t]he purpose of the written waiver requirement is to guard against silent waivers"); *see also Brand*, 55 Wn. App. at 785. Although a written waiver cannot be regarded as conclusive,

> it is certainly strong evidence that the accused effectively waived his right to a jury trial. Indeed, the purpose of the writing requirement is to ensure that a waiver is knowing, voluntary and intelligent.

---

[1]U.S. Const. amends. 6, 14; Const. art. 1, §§ 21, 22.

[2]CrR 6.1(a) provides:

"**(a) Trial by Jury.** Cases required to be tried by jury shall be so tried unless the defendant files a written waiver of a jury trial, and has consent of the court."

*State v. Downs*, 36 Wn. App. 143, 145, 672 P.2d 416 (1983), *review denied*, 100 Wn.2d 1040 (1984).[3]

Here, not only did Lund sign a written waiver, but Lund's counsel stated in court that Lund waived his right to trial by jury, Lund orally stated to the court that he waived his right to trial by jury, and the trial judge engaged in an extended colloquy with Lund regarding the effects of the waiver. Although Lund twice indicated some possible reservation, thereafter he consulted with his counsel, and after such consultation he unequivocally stated that he waived his right to a jury trial. It is difficult to conceive of a clearer example of voluntary waiver, or of what else the trial judge might have done to assure the waiver was knowing, intelligent and voluntary. Thus, we hold that Lund validly waived his right to a trial by jury.

## B. Sufficiency of the Findings of Fact

Lund next contends that his conviction must be reversed because the trial court failed to find specifically that Lund intended to deny Tracie Lund access to Damadora. Intent to deny access to the child by a person having a lawful right to physical custody is an element of the crime of custodial interference. RCW 9A.40.060;[4] *State v. Myers*, 49 Wn. App. 243, 248, 742 P.2d 180 (1987).

---

[3]Likewise, in *Brand*, this court stated that:
"To date, no Washington case has required more than a written waiver. The claim that an extended colloquy on the record is required for jury waiver has been rejected each time it has been presented." (Footnote omitted.) 55 Wn. App. at 785.

[4]RCW 9A.40.060, defining the crime of custodial interference in the first degree, provides in pertinent part:
"**9A.40.060. Custodial interference in the first degree.** (1) A relative of a child under the age of eighteen or of an incompetent person is guilty of custodial interference in the first degree if, with the intent to deny access to the child or incompetent person by a parent, guardian, institution, agency, or other person having a lawful right to physical custody of such person, the relative takes, entices, retains, detains, or conceals the child or incompetent person from a parent, guardian, institution, agency, or other person having a lawful right to physical custody of such person and:

■■ In a bench trial, findings of fact are required to support a conviction. *State v. Greco*, 57 Wn. App. 196, 204, 787 P.2d 940, *review denied*, 114 Wn.2d 1027 (1990).[5] Lund argues that to intend to hold a child as "bait" to obtain a perceived advantage of marital reconciliation is inconsistent with intent to deny access. We disagree. Lund himself testified that one of his purposes for taking Damadora was to "rectify the marriage". Lund's admission that one of his motives for taking Damadora was to entice Tracie Lund to California is tantamount to an admission of intent to deny access, at least until Tracie Lund complied with his wishes. Children, however, are not chattels and they cannot lawfully be used in such a manner. To intend to deny access to a child until the lawful custodian gives in to the demands of the holder is still an intent to deny access. We hold that it is not a defense to the intent to deny access element of the crime that a child is only being held as "bait" until the lawful physical custodian submits to the demands of the holder of the child.[6]

We further hold that implicit in the trial court's findings that Lund intended to keep Damadora for a protracted period and to use the child as "bait" is a finding that Lund

---

"(a) Intends to hold the child or incompetent person permanently or for a protracted period; or

". . . .

"(c) Causes the child or incompetent person to be removed from the state of usual residence; or

". . . ."

[5]In *Greco*, the court noted that findings: "should separately state the factual basis for the legal conclusions as to each element of the crime. *State v. Russell*, 68 Wn.2d 748, 750, 415 P.2d 503 (1966). Without comprehensive, specific written findings, the appellate court cannot properly review the trial court's resolution of the disputed facts and its application of the law to those facts. *Russell*, 68 Wn.2d at 750-51." *Greco*, 57 Wn. App. at 204.

[6]Intent to deny access was an issue at trial only insofar as Lund denied the charges and the State had the burden to prove all elements of the charged crime. Lund relied at trial on the statutory affirmative defense that Damadora was in imminent danger. The court, however, rejected this defense and that finding has not been appealed.

had the required intent to deny Tracie Lund access to the child.

Accordingly, we affirm.

GROSSE, C.J., and AGID, J., concur.

Review denied at 118 Wn.2d 1028 (1992).