**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 55206-0-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| DANIEL LEE HUSTON, | |
| Appellant. | |

WORSWICK, J. — Daniel Lee Huston failed drug court and was found guilty at a stipulated facts bench trial. He appeals his convictions and sentence, arguing that (1) he did not validly waive his right to a jury trial because the trial court failed to inform him of the "four crucial facts" required in federal cases, (2) his jury trial waiver was not made knowingly, intelligently, and voluntarily, and (3) the trial court erred in imposing supervision fees. We disagree with Huston's arguments, and we affirm his convictions and sentence.

## FACTS

The State charged Huston with possession of a stolen motor vehicle, attempting to elude a pursuing police vehicle, driving while license suspended in the first degree, and operating a vehicle without ignition interlock device. At the time of the crimes, Houston was 32 years old and had completed one year of college. Houston agreed to enter into drug court "to gain[ ] the tools to . . . start over." 1 Report of Proceedings (RP) (Oct. 11, 2019) at 8. Huston's admission into drug court was subject to terms and conditions outlined in a drug court contract.

No. 55206-0-II

The drug court contract provided that Huston's failure to comply with the program's terms or conditions would subject him to sanctions that included termination from the program. The contract also stated:

> If [Huston] is terminated from the program, [he] agrees and stipulates that the Court will determine the issue of guilt on the pending charge(s) solely upon the law enforcement/ investigative agency reports or declarations, witness statements, field test results, lab test results, or other expert testing or examinations such as fingerprint or handwriting comparisons, which constitute the basis for the prosecution of the pending charge(s). [He] further agrees and stipulates that the facts presented by such reports, declarations, statements, and/or expert examinations are sufficient for the Court to find [him] guilty of the pending charge(s).

Clerk's Papers (CP) at 5.

Additionally, the contract provided:

> Defendant acknowledges an understanding of, and agrees to waive the following rights:
>
> a. The right to a speedy trial pursuant to [CrR] 3.3;
>
> b. The right to a public trial by an impartial jury in the county where the crime is alleged to have been committed;
>
> c. The right to hear and question any witness testifying against the defendant;
>
> d. The right at trial to have witnesses testify for the defense, and for such witnesses to be made to appear at no expense to the defendant; and
>
> e. The right to testify at trial.

CP at 5. Both Huston and his attorney signed the contract. Below the signatures, Huston and his attorney checked two boxes stating that "[t]he defendant had previously read the entire Contract above and understood it in full," and "the defendant's attorney had previously read the Contract to [him] and the defendant understood it in full." CP at 6.

2

No. 55206-0-II

At the hearing, the trial judge conducted a colloquy about the drug court contract. During the colloquy, Huston acknowledged he was familiar with the document, he had read the document in full, he had gone over the document with his attorney, and that his attorney answered all questions about his "case, this paperwork, [and] what Drug Court is going to mean for [him]." 1 RP (Oct. 11, 2019) at 4. The judge then asked the following:

> [D]o you understand, too, to obtain the potential benefit of a dismissal, you give up certain rights associated with your trial. And specifically, those rights that you are giving up are encompassed in paragraphs 16 through 23[1] of the Drug Court contract. And do you know what I'm talking about?

1 RP (Oct. 11, 2019) at 5. Huston responded "Yes, ma'am." 1 RP (Oct. 11, 2019) at 6. The trial judge then asked

> Do you understand that the matter would come back before me and we would hold what we call a stipulated facts bench trial, which means that I would simply read the police reports and other discovery associated with your case and determine whether or not you were guilty or not guilty based upon a reading of those materials? Do you understand that?

1 RP (Oct. 11, 2019) at 6. Huston responded "Yes, ma'am." 1 RP (Oct. 11, 2019) at 6. Huston then acknowledged that there are "enough facts in those materials for the court to find [him] guilty." 1 RP at (Oct. 11, 2019) at 6. The court concluded by saying

> I find that Mr. Huston has read all of these documents in full and understands them; that he's discussed all of this with [his attorney] and has had his questions answered, that he is knowingly, intelligently, and voluntarily seeking entry into the Drug Court program, and I have signed your Drug Court contract.

1 RP (Oct. 11, 2019) at 9.

---

[1] Paragraphs 16 through 23 contained waivers of various rights, including the rights listed above.

No. 55206-0-II

A year after Huston's admission to drug court, the trial court terminated Huston for noncompliance with the drug court contract conditions. Huston had relapsed, overdosed, and required hospitalization following the death of his father.

The trial court then held a stipulated facts bench trial. The court found Huston guilty of possession of a stolen motor vehicle and operating a vehicle without ignition interlock device.[2] The court sentenced Houston to 25.5 months in prison and ordered that Huston "pay supervision fees as determined by [Department of Corrections]" as a condition of community custody. CP at 14-15.

Houston appeals.

ANALYSIS

I. JURY WAIVER

The right to a jury trial is protected by both the federal and state constitutions. U.S. CONST. amend. VI; WASH. CONST. art. I, §21 and §22. A defendant may waive his right to a jury trial if he makes the waiver knowingly, intelligently, and voluntarily. *State v. Benitez*, 175 Wn. App. 116, 128, 302 P.3d 877 (2013). We review a jury trial waiver de novo. *State v. Ramirez–Dominguez*, 140 Wn. App. 233, 239, 165 P.3d 391 (2007). And, the State has the burden of proving that the waiver was valid. *Ramirez–Dominguez*, 140 Wn. App. at 239.

_____

[2] The State dismissed the charge of attempting to elude, and the court found Huston not guilty of driving with license suspended.

4

A.    Gunwall *Analysis and the "Four Crucial Facts"*

Huston argues that we should engage in a *Gunwall*[3] analysis and require trial courts to inform defendants of "four crucial facts," which are four characteristics of a jury trial that federal courts have encouraged—as a matter of best practice—to advise defendants. We decline to do so.

Under federal law, where a trial court has reason to suspect that a written waiver was not voluntary, knowing, and intelligent, a valid waiver of the federal right a jury trial can only occur if the court informs the defendant of "four crucial facts": "(1) twelve members of the community compose a jury; (2) the defendant may take part in jury selection; (3) jury verdicts must be unanimous; and (4) the court alone decides guilt or innocence if the defendant waives a jury trial." *United States v. Shorty*, 741 F.3d 961, 966 (9th Cir. 2013). For example, a defendant's mental or emotional disability, low I.Q. (intelligence quotient), or language barrier may raise the question of whether a waiver was made knowingly and intelligently.[4] *Shorty*, 741 F.3d at 966-68.

In contrast, Washington law requires only some "personal expression of waiver from the defendant." *State v. Stegall*, 124 Wn.2d 719, 725, 881 P.2d 979 (1994). No colloquy is required for a valid waiver of the right to a jury. *Ramirez-Dominguez*, 140 Wn. App. at 240; *Stegall*, 124 Wn.2d at 728. We have repeatedly rejected calls to require "more" than this personal expression

---

[3] *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986).

[4] Huston does not argue that factors that would give rise to requiring the four crucial factors exist here. Wash. Court of Appeals oral argument, *State v. Huston*, No. 55206-0 (Jan. 25, 2022), at 3 min., 13 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org.

to find a valid waiver. *See e.g., Ramirez-Dominguez*, 140 Wn. App. at 240; *Stegall*, 124 Wn.2d at 728; *Benitez*, 175 Wn. App. at 129. Huston does not provide a compelling reason as to why we should deviate from well-established precedent.

Huston requests that we conduct a *Gunwall* analysis and argues that because Washington's constitution is more protective of a defendant's right to a jury trial, Washington's constitution "requires courts to ensure that the defendant understands the 'four crucial facts.'" Br. of Appellant at 7 (quoting *Shorty*, 741 F.3d at 966). As we did in *State v. Pierce*, 134 Wn. App. 763, 773, 142 P.3d 610 (2006), we decline to conduct a *Gunwall* analysis, and we reject Huston's argument that the Washington Constitution requires a trial court to advise a defendant of the "four crucial facts" prior to accepting a jury waiver.

We note that this court has rejected this same argument multiple times. *Pierce*, 134 Wn. App. at 773; *Benitez*, 175 Wn. App. at 119; *State v. Brand*, 55 Wn. App. 780, 788, 780 P.2d 894 (1989). Washington courts have previously determined that the right to trial by jury under Washington's state constitution is broader than the federal constitutional jury trial right. *Pierce*, 134 Wn. App. at 770. In *Pierce*, we held that "although Washington's constitutional right to a jury trial is more expansive than the federal right, it does not automatically follow that additional safeguards are required before a more expansive right may be waived." 134 Wn. App. at 773.

As the State correctly notes, it is not necessary for us to engage in a *Gunwall* analysis because Huston's argument conflates constitutional rights with the manner in which they may be waived. Huston incorrectly assumes that if a right is more expansive, it necessarily follows that the *waiver* of that right must be subject to additional procedural safeguards. However, the fact that a right is more expansive does not correlate to requiring additional procedures to waive that

right. *Pierce*, 134 Wn. App. at 773; *Benitez*, 175 Wn. App. at 127 ("the extent of protection offered under the Washington constitution has no bearing on the legal standard for waiving the right").

The *Gunwall* factors establish whether a right is more expansive under the state constitution, but they do not dictate the manner in which that right may or may not be waived. *Gunwall*, 106 Wn.2d at 61. *See State v. Hos*, 154 Wn. App. 238, 250, 225 P.3d 389 (2010) (holding that the right to a jury trial is of constitutional magnitude, while the manner waiving the right is a procedural evidentiary issue).

Washington courts do not require the defendant to be notified of the "four crucial facts" to render a jury waiver valid. *Stegall*, 124 Wn.2d at 725. Instead, our courts require a personal expression of waiver from the defendant and consent by the court, taking the defendant's capabilities and experience into account. *Stegall*, 124 Wn.2d at 725; *Ramirez-Dominguez*, 140 Wn. App. at 245. Thus, Huston's arguments fail.

B.      *Overruling* Pierce

Huston argues that we should overrule *Pierce* because it is inconsistent with Supreme Court precedent and the Washington Constitution. We disagree.

In *Pierce*, the defendant argued that his jury waiver was invalid because "a valid waiver of the state constitutional right to a jury trial requires more than a valid waiver of the corresponding federal right." *Pierce*, 134 Wn. App. at 769. We declined Pierce's invitation to conduct a *Gunwall* analysis, holding that "[a]lthough Washington's constitutional right to a jury trial is more expansive than the federal right, it does not automatically follow that additional

safeguards are required before a more expansive right may be waived." *Pierce*, 134 Wn. App. at 773.

The analysis in *Pierce* is correct. Huston conflates the protections associated with a constitutional right and the corresponding safeguards that must follow. Moreover, this principle is consistent with our precedent. *See Brand*, 55 Wn. App. at 788; *Stegall*, 124 Wn.2d at 729 (holding that a waiver of the right to a jury trial is valid "on a showing of either (1) a personal statement from the defendant expressly agreeing to the waiver, or (2) an indication that the trial judge or defense counsel has discussed the issue with the defendant prior to the attorney's own waiver."); *State v. Trebilcock*, 184 Wn. App. 619, 636, 341 P.3d 1004 (2014). We decline Huston's request to depart from *Pierce.*

C.      Huston's Waiver Was Made Knowingly, Intelligently, and Voluntarily

Huston briefly argues that even if the "four crucial facts" were not required, this record is insufficient to show that his waiver was made knowingly, intelligently, and voluntarily. We disagree.

Washington law allows a defendant to waive a jury trial. *Stegall*, 124 Wn.2d at 723; RCW 10.01.060; CrR 6.1(a). The defendant must waive his right knowingly, intelligently, and voluntarily. *Ramirez-Dominguez*, 140 Wn. App. at 240. When determining whether a waiver was made knowingly, intelligently, and voluntarily, we examine whether the defendant was informed of his constitutional right to a jury trial, and we examine the facts and circumstances, including the experience and capability of the accused. *Ramirez-Dominguez*, 140 Wn. App. at 240. "No colloquy is required for a waiver of the right to a jury; all that is required is a personal expression of waiver by the defendant." *Ramirez-Dominguez*, 140 Wn. App. at 240. A written

waiver is strong evidence of the waiver's validity. *Ramirez-Dominguez*, 140 Wn. App. at 240 n.10. When a record shows that the waiver occurred, we presume that a defendant waived his jury trial right. *Pierce*, 134 Wn. App. at 771.

In this case, Houston signed a written waiver of his right to a jury trial. He orally agreed to the waiver and indicated that he understood the written waiver. Huston also indicated that he discussed the waiver with his attorney. Huston also orally agreed to a bench trial. And, he indicated that he had no further questions and that all his questions about his waiver were answered by his attorney. Additionally, the facts and circumstances do not warrant a finding that the waiver was not made knowingly, intelligently, or voluntarily. Huston was 32 years old when he waived his right to a jury trial, and he had completed one year of college. We presume the validity of a written waiver, and nothing in the record indicates that Huston did not understand the waiver or that he involuntarily waived his right.

Because the record shows that Huston made his waiver knowingly, intelligently, and voluntarily, Huston's argument fails and his waiver is valid.

## II. COMMUNITY CUSTODY SUPERVISION FEE

Huston argues that his judgment and sentence should be amended to strike the provision requiring him to pay community custody supervision fees because he is indigent. We disagree.

RCW 10.01.160(3) provides that "[t]he court shall not order a defendant to pay costs if the defendant at the time of sentencing is indigent."[5] RCW 9.94A.760(1) provides that the

---

[5] A determination of indigency must be made by the trial court through written findings. RAP 15.2(b). Although the judgment and sentence does not contain a finding that Huston was indigent, the trial court did find that Huston "lacks sufficient funds to prosecute an appeal," CP at 32, and the parties agree that Huston is indigent. Thus, we presume his indigency.

sentencing court cannot order an indigent defendant to pay "costs" as described in RCW 10.01.160. RCW 10.01.160(2) defines "costs" as follows: "Costs shall be limited to expenses specially incurred by the state in prosecuting the defendant or in administering the deferred prosecution program under chapter 10.05 RCW or pretrial supervision." The community custody supervision fees were imposed under RCW 9.94A.703, which states that "Unless waived by the court, as part of any term of community custody, the court shall order an offender to . . . [p]ay supervision fees as determined by the [Department of Corrections]." RCW 9.94A.703(2), (2)(d).

Community custody supervision fees are discretionary legal financial obligations (LFOs). *State v. Lundstrom*, 6 Wn. App. 2d 388, 396 n.3, 429 P.3d 1116 (2018). However, community custody supervision fees "do not meet the definition of a cost under RCW 10.01.160(2) because they are not an expense specially incurred by the State to prosecute the defendant, to administer a deferred prosecution program, or to administer pretrial supervision." *State v. Starr*, 16 Wn. App. 2d 106, 109, 479 P.3d 1209 (2021). *See State v. Spaulding*, 15 Wn. App. 2d 526, 536, 476 P.3d 205 (2020) (holding that community supervision fees are not costs). "Instead, community custody supervision fees are intended to cover post-conviction costs that will be incurred at a later date to help fund the [Department of Corrections]." *Starr*, 16 Wn. App. 2d at 109. Because supervision fees are not costs, the trial court did not err in imposing these costs against Huston.

Huston argues that we should overturn *State v. Starr*, 16 Wn. App. 2d 106, 109, 479 P.3d 1209 (2021) because it is incorrect and harmful. However, Huston has done nothing more than identify conflicting court of appeals decisions. We decline to depart from *Starr*.

No. 55206-0-II

Division I has concluded that the trial court may not impose supervision fees on indigent defendants because they are discretionary. *State v. Pervez*, 15 Wn. App. 2d 265, 280, 478 P.3d 103 (2020). Conversely, Division II has held that a trial court may impose supervision fees on indigent defendants. *Starr*, 16 Wn. App. 2d at 109; *Spaulding*, 15 Wn. App. 2d at 536. We are not bound by the decision in *Pervez*, and we decline to follow its holding. We hold that the trial court did not err in imposing community custody supervision fees.

We affirm Huston's convictions and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Maxa, J.

Hull, J. Pro Tempore[6]

---

[6] Judge Hull is serving as a judge pro tempore of the court pursuant to RCW 2.06.150.