[No. 7075–4–I.   Division One.   June 16, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHNNY
WAYNE WILEY, *Appellant.*

*Cynthia S. Wills* of *Seattle–King County Public Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *J. Robin Hunt, Deputy,* for respondent.

SWANSON, J.—The principal issue presented by this appeal is one of first impression in this state: whether the defendant's stipulation to facts outlined by the prosecutor was tantamount to a guilty plea calling into play the safeguards of CrR 4.2. A corollary issue is whether the record of the stipulation proceeding demonstrates a valid waiver of the right to trial by jury.

The facts which formed the basis for a 2–count information charging Johnny Wayne Wiley with second–degree rape and third–degree theft are these: At an early morning hour on June 7, 1978, defendant Wiley engaged in sexual intercourse with the female victim. The victim claimed the act was accomplished with force, but Wiley's version was that the victim had consented. Later in the morning the victim discovered that food stamps valued at $61 were missing. Following Wiley's arrest for rape, food stamps taken from his person and placed in the police property box were discovered to bear serial numbers corresponding to those missing from the victim's residence.

Pretrial motions were heard on August 24, 1978. Wiley moved for suppression of discovery of the food stamps on the ground that they were illegally seized. Following an evidentiary hearing the motion was denied. A jury was empaneled the next morning. But immediately prior to the jury's being brought in, Wiley, through counsel, indicated his willingness to stipulate to the State's evidence in count 2, the theft charge, as outlined by the prosecutor. Following the prosecutor's summary of the evidence the trial court

asked Wiley directly if he was willing to so stipulate and if he was willing to permit the court to make a finding of guilt or innocence. Wiley replied yes. The court thereupon found him guilty of third–degree theft. Trial to the jury proceeded on the rape count, and a guilty verdict was returned.

At sentencing the prosecutor noted for the record that a written waiver of jury trial had not previously been executed. She stated the written waiver signed by Wiley would be entered at that time. Wiley and his counsel indicated that they had discussed the waiver, and Wiley said he had no objection to its being approved by the court.

Counsel and the court then reviewed the presentence report which revealed that Wiley had a drinking problem and, with an I.Q. of 69, was moderately retarded. The court stated it was aware of Wiley's developmental disabilities but imposed a 10–year prison sentence for the rape; a 1–year jail term for the theft was suspended.

Wiley's principal argument on appeal is that his stipulation to facts regarding the alleged theft was tantamount to a guilty plea thus calling into play the procedural safeguards contained in CrR 4.2:

> The court shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.

CrR 4.2(d).

Under the rule, the trial judge has the duty to make direct inquiries of the defendant as to whether he understands the nature of the charge and the consequences of the plea. *Wood v. Morris,* 87 Wn.2d 501, 554 P.2d 1032 (1976).

The issue has not been decided in Washington, but other jurisdictions have held that under certain circumstances guilty plea admonitions are necessary even though the defendant does not expressly plead guilty. Wiley cites *In re Mosley,* 1 Cal. 3d 913, 464 P.2d 473, 83 Cal. Rptr. 809 (1970), a case submitted to the court for decision on the

basis of a transcript of a preliminary hearing. The court said,

> where . . . the defendant submits his case on a transcript of the preliminary hearing which under the circumstances can offer him no hope of acquittal, such submission is tantamount to a plea of guilty and must be accompanied by the constitutional and statutory safeguards which such a plea entails.

*In re Mosley, supra* at 927.

Similarly, in *State v. Woods,* 114 Ariz. 385, 561 P.2d 306 (1977), it was held that submission of the case for decision on police reports, unsworn statements, and grand jury and preliminary hearing transcripts was tantamount to a guilty plea. The Arizona court noted,

> The appellant neither argued the legal significance of the facts nor presented any defensive evidence.
>
> Moreover, the record shows that the submission was by agreement between the State and appellant. A discussion in court related to appellant's sentence. The prosecution stated that it would not oppose a sentence concurrent with appellant's federal sentence. The totality of the circumstances shows this proceeding was not in any sense a trial, and the record, when fairly read, offers no hope that there could be an acquittal.

*State v. Woods, supra* at 388.

A guilty plea, however, is functionally and qualitatively different from a stipulation. A guilty plea generally waives the right to appeal. *State v. Saylors,* 70 Wn.2d 7, 422 P.2d 477 (1966). A guilty plea has been said to be "itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin v. Alabama,* 395 U.S. 238, 242, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969).

A stipulation, on the other hand, as was employed in the instant case, is only an admission that if the State's witnesses were called, they would testify in accordance with the summary presented by the prosecutor. The trial court must make a determination of guilt or innocence. *State v. Gossett,* 120 Ariz. 44, 583 P.2d 1364 (1978). More importantly, a stipulation preserves legal issues for appeal and

can operate to keep potentially prejudicial matters from the jury's consideration.

In addressing the issue, the Illinois Court of Appeals has said,

> if the stipulation of the State's case–in–chief extends to stipulating, in effect, the very fact of guilt itself and there is no defense whatever, then such a stipulation is tantamount to the entry of a plea of guilty.

*People v. Russ,* 31 Ill. App. 3d 385, 389, 334 N.E.2d 108 (1975).

Thus, in *People v. Ford,* 44 Ill. App. 3d 94, 357 N.E.2d 865, 2 Ill. Dec. 645 (1976), a stipulated bench trial was held not to be tantamount to a guilty plea when a motion to suppress statements by the defendant had been previously denied following lengthy hearings. The court stated,

> a stipulated bench trial is not tantamount to a guilty plea where a defense, factual or legal, is presented. The underlying rationale for this position is that a guilty plea waives all nonjurisdictional defenses. . . . It appears that in this case defense counsel utilized the stipulated bench trial procedure in order to preserve legal defenses, namely, the court's denial of defendant's motions to suppress statements and for leave to file a sexually dangerous petition.

(Citation omitted.) *People v. Ford, supra* at 98.

In the instant case the defendant preserved the issue of the legality of the seizure of the food stamps, even though he did not raise the issue on appeal. In addition, under the stipulation it was left to the trial court to determine guilt or innocence. This is illustrated by the following colloquy:

> THE COURT: All right.
>
> Mr. Wiley, you heard the statements of your counsel Mr. Nomura that you are willing to stipulate that the allegations as outlined by the Prosecutor, Miss Hunt, would be what the witnesses, if called, would testify to. Are you at this time saying that you are willing to stipulate that that is what they would testify to, and are you willing at this point not to contest the testimony as outlined, the allegations as outlined by the Prosecutor, and

permit the Court to make a finding as to guilt or innocence based on her offer of proof?

On appeal, Wiley makes much of the fact that trial counsel remarked just prior to the prosecutor's outline of the facts for the court, "It appears that those facts are sufficient for this Court to find Mr. Wiley guilty of Count II." Whatever the apparent legal significance of the facts might have been to defense counsel, it remains that the stipulation was only to the facts outlined by the prosecutor. Defense counsel at no time stipulated to Wiley's guilt. To illustrate the distinction, had the prosecutor omitted from her summary of the facts an essential element of the charge, she would not have been able to contend successfully that defense counsel had stipulated to Wiley's guilt.

Because the stipulation was not tantamount to a guilty plea, CrR 4.2 admonitions were not required.

Wiley next raises a constitutional issue by contending that there was an inadequate waiver of jury trial.[1] He argues that a criminal defendant's attorney may not waive his client's right to jury trial, citing *State v. Wicke,* 91 Wn.2d 638, 591 P.2d 452 (1979), for the propositions that every reasonable presumption should be indulged against a waiver and the prosecution bears the burden of demonstrating that there was a personal waiver by the defendant. To complete the equation, Wiley points out that he is moderately retarded with an I.Q. of 69. He thus concludes that a duty was imposed on the trial court to conduct a detailed inquiry regarding the waiver of jury trial.

---

[1]We do not understand Wiley's contention to be that his conviction must be reversed because of noncompliance with CrR 6.1(a), which requires written waivers. However, if this is Wiley's argument, it must be rejected because he failed to call the alleged error to the attention of the trial court. The evidentiary requirement of CrR 6.1(a) is not constitutionally mandated. *State v. Wicke,* 91 Wn.2d 638, 591 P.2d 452 (1979). Generally, to preserve error for consideration on appeal, the alleged error must be called to the trial court's attention. *Wicke.* Whatever objection Wiley might have had because no written waiver was entered was withdrawn, and the error, if any, was waived when Wiley executed the written waiver at sentencing. *Wood v. Morris,* 87 Wn.2d 501, 554 P.2d 1032 (1976).

■ Initially, we observe that Wiley's claims regarding his retardation are not dispositive in determining whether there was a valid waiver of the right to trial by jury. The trial judge learned at sentencing from the presentence report that Wiley had a relatively low I.Q. However, no claim was made that Wiley did not understand the waiver of jury trial, the nature of the offense, or the nature of the proceedings. Moreover, Wiley took the stand in his own behalf during the trial on the rape charge and answered questions with no apparent difficulty. In short, the record reveals nothing indicating that Wiley's I.Q. affected his ability to make intelligent decisions, based on advice of competent counsel, regarding his defense. In addition, there is no indication that any occurrence at trial caused the judge concern about Wiley's ability to comprehend what was taking place. Certainly, defense counsel, who was in the best position to be aware of any difficulties Wiley might have had, could have brought the matter to the attention of the court had it been thought significant. We have said, in an analogous context, that

> [a] plethora of authority supports the rule that [m]oderate retardation and a low intelligence quotient do not of themselves vitiate the ability to knowingly and intelligently waive constitutional rights and make a free and voluntary confession.

*State v. Edwards,* 257 La. 707, 243 So. 2d 806 (1971).

*State v. Lanning,* 5 Wn. App. 426, 436, 487 P.2d 785 (1971).

Although we hold that Wiley's moderate retardation, as evidenced by his I.Q. score, does not vitiate his waiver of jury trial, the question remains whether the record demonstrates a valid waiver. In *State v. Wicke, supra,* defense counsel waived jury trial by oral stipulation while Wicke stood beside him in open court. No written waiver was filed, and the judge did not question Wicke as to his concurrence in the waiver or whether he had discussed the matter with his attorney. The Supreme Court concluded that the record did not demonstrate, to the degree demanded by the

United States Supreme Court, that Wicke validly waived his right to a jury trial.

In contrast, here the trial court asked Wiley directly, at the time the stipulation to the prosecution's evidence was made, whether he was willing to let the court make a finding as to his guilt or innocence. Wiley said yes. This exchange took place after the jury had been empaneled and immediately before the jury was to be brought in. Moreover, Wiley ratified his waiver by subsequently executing a written waiver, as contemplated by CrR 6.1(a), and stating at the time of sentencing that he had no objection to the court's approving the waiver. The record before us thus demonstrates that Wiley validly waived his right to jury trial on the theft count.

Lastly, Wiley argues that the trial court erred in allowing the prosecutor to make reference to the finding of guilt on the theft charge during the course of the rape trial. This issue, however, was not raised below. Further, the record discloses that Wiley's trial attorney acknowledged that he had no objection to the prosecutor's arguing the food stamp theft as part of the rape case. Wiley thus failed to preserve any claim of error for consideration on appeal.

Finding no error, we affirm the trial court.

Affirmed.

DORE and RINGOLD, JJ., concur.

Reconsideration denied July 11, 1980.

Review denied by Supreme Court October 10, 1980.