[No. 15814-1-II.    Division Two.    March 14, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. DAVID M.
OLSON, *Appellant.*

*Brett A. Purtzer* and *Law Offices of Monte E. Hester, Inc., P.S.,* for appellant.

*C. Danny Clem, Prosecuting Attorney,* and *Patricia M. Stuart, Deputy,* for respondent.

ALEXANDER, J. — David M. Olson appeals his conviction on a charge of unlawful manufacture of marijuana. He contends on appeal that the trial court erred in denying his motion to suppress evidence seized, pursuant to search warrants, from mobile homes and outbuildings at two locations. He also contends that the trial court erred in denying his pretrial motion to dismiss the charge. We affirm.

On July 5, 1991, Drug Enforcement Agency (DEA) Special Agents Moss and Chin received a telephone call from an unidentified person, who informed the agents that Bruce W. Olson and David M. Olson were involved in a marijuana grow operation at 12295 Madrona Road in Port Orchard. Moss, along with Washington State Patrol Detective Knies, thereafter commenced a surveillance of the property in question, including a mobile home and a brick building that were located on the property. During their surveillance of the property on July 9, they observed David Olson visit the property.

The law enforcement officers determined, through a records check, that the property under surveillance was owned by Bruce Olson, David Olson's brother. The officers also reviewed records relating to recent power consumption at the property and concluded that there was "inordinately high power usage". The records indicated that the subscriber for electrical power was James Bury, but the officers were unable to locate such a person.

The officers again conducted a surveillance of the property at 12295 Madrona on July 19, 1991. On this occasion, Moss and Knies approached the property via a driveway. Knies "detected a strong odor of marijuana emanating from the direction of the brick building and the mobile home". Moss also detected the marijuana odor.

On July 22, 1991, Knies and another detective observed Matthew Olson, David Olson's son, open the front door of the mobile home at 12295 Madrona. On July 23, 1991, Washington State Patrol Detective Price, while performing surveillance of 12295 Madrona, detected the "odor of marijuana" from the direction of the brick building and mobile home. The next day, Knies observed David Olson and his wife, Jeanette, arrive at 12295 Madrona in their car. The Olsons parked next to the brick building and then entered it, joined by Olson's son Matthew. David and Jeanette left the brick building and the premises approximately 30 minutes later. The Olsons drove to 11452 Fairview Boulevard in Port Orchard.

Agent Moss determined, through a check of real estate records, that David Olson owned and resided at the property located at 11452 Fairview. In addition, Agent Moss conducted a criminal records check on David Olson and learned that Olson had been arrested at Sea-Tac Airport in September of 1990 for possession of 1 pound of marijuana.

Moss presented an affidavit to a United States magistrate containing facts consistent with those set forth above. The magistrate issued search warrants authorizing searches for evidence of a marijuana grow operation at a mobile home and two storage units located at 11452 Fairview and a mobile home and brick building located at 12295 Madrona.

Upon execution of the search warrant at 12295 Madrona, special agents from the DEA and detectives from the Washington State Patrol Narcotics Section (WSPNS) entered the brick building and discovered an "indoor mari[j]uana growing operation" in one room, which included eight halide growing lights and 190 marijuana plants. The authorities also found

David Olson's fingerprints on a reflector shield and on lightbulbs in the light fixtures used in the grow operation.[1]

Upon execution of the search warrant at 11452 Fairview, other DEA agents and WSPNS detectives discovered several marijuana plants in the master bedroom in addition to scales, baggies, and a small amount of dried marijuana.

Olson was charged with one count of manufacture of marijuana in violation of RCW 69.50.401(a)(1)(ii).[2] Before trial, Olson moved to exclude physical evidence obtained from both searches, contending that the magistrate lacked probable cause to issue the search warrants. After a suppression hearing, held pursuant to CrR 3.6, the trial court concluded that the warrants for 12295 Madrona and 11452 Fairview were both supported by probable cause. It, therefore, denied Olson's motion to suppress.

Olson then filed a so-called *Knapstad* motion to dismiss the charge against him. *See State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986). He supported his motion with an affidavit, in which he claimed that the evidence the State would produce at trial would not establish a prima facie case. The State responded with its own affidavit, which summarized the evidence it would present to support the charge. Olson's motion was denied.

Following denial of his two pretrial motions, Olson purported to enter into a plea agreement with the State. The agreement provided that Olson was "retaining his rights to appeal the court's rulings on the *Knapstad* motion and the suppression (3.6) hearing". The trial judge, after reviewing the agreement, found Olson "guilty by . . . court verdict" of the charge.

---

[1]The authorities had initially secured the mobile home on the premises, which was at that time being lived in by Matthew Olson. The mobile home was owned by David Olson, who was in the process of selling it to Matthew.

[2]RCW 69.50.401(a)(1)(ii) provides in part: "Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance. . . . classified in Schedule I, II, or III". Marijuana is a schedule I controlled substance. RCW 69.50.204(c)(14).

# I

## APPEALABILITY

The first issue we must decide is whether Olson may appeal his conviction. We must address that question because the record contains a plea agreement signed by Olson and the deputy prosecuting attorney, which suggests that Olson pleaded guilty to the charge of manufacturing marijuana. If, indeed, he did enter a guilty plea, then he would not be entitled to appeal the denial of any pretrial motions. A guilty plea generally waives the right to appeal. *State v. Wiley*, 26 Wn. App. 422, 425, 613 P.2d 549, *review denied*, 94 Wn.2d 1014 (1980). A guilty plea is "more than an admission of conduct; it is a conviction" and "nothing remains but to give judgment and determine punishment." *Boykin v. Alabama*, 395 U.S. 238, 242, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969).

■ At oral argument before this court, the State and Olson agreed that Olson had not intended to enter into a guilty plea, but rather intended to have a bench trial on stipulated facts. A stipulation "is only an admission that if the State's witnesses were called, they would testify in accordance with the summary presented by the prosecutor." *Wiley*, 26 Wn. App. at 425. In a bench trial on stipulated facts, it is the trial court, not the defendant, that makes the determination of guilt or innocence. Unlike a guilty plea, a stipulation preserves legal issues for appeal. *Wiley*, 26 Wn. App. at 425-26.

Although the record is somewhat confusing, we accept the statements of the State and defendant that Olson did not plead guilty. We will, therefore, conduct our review of this case as if Olson had been found guilty at a bench trial on stipulated facts. Evidence in the record supports our decision. In the purported plea agreement, the parties provided that "[d]efendant stipulat[es] to facts in police report for purposes of this plea agreement retaining his rights to appeal . . .". In addition, the judgment and sentence entered by the trial court indicated that "the defendant, was found guilty by . . . court verdict".

Although the record does not contain the stipulated facts upon which the trial court relied, it is apparent that the affidavits and supporting information submitted by both parties on the *Knapstad* motion were the facts considered by the trial judge.[3]

## II
### WERE THE WARRANTS SUPPORTED BY PROBABLE CAUSE?

■ Olson contends that the affidavit supporting the search warrants was invalid because it was not supported by probable cause. A warrant may issue only upon probable cause. U.S. Const. amend. 4. An affidavit establishes probable cause to support a search warrant if it sets forth facts sufficient to allow a reasonable person to conclude that there is a probability that the defendant is involved in criminal activity and that evidence of the crime can be found at the place to be searched. *State v. Maxwell*, 114 Wn.2d 761, 769, 791 P.2d 223 (1990); *State v. Bittner*, 66 Wn. App. 541, 545, 832 P.2d 529 (1992), *review denied*, 120 Wn.2d 1031 (1993); *State v. Garcia*, 63 Wn. App. 868, 871, 824 P.2d 1220 (1992).

■ Issuance of a warrant is a matter of judicial discretion and is, therefore, reviewed under the abuse of discretion standard. *State v. Remboldt*, 64 Wn. App. 505, 509, 827 P.2d 282, *review denied*, 119 Wn.2d 1005 (1992). We accord great deference to the issuing magistrate's determination of probable cause and resolve any doubts in favor of the validity of the warrant.[4] *State v. Kalakosky*, 121 Wn.2d 525, 531, 852 P.2d 1064 (1993).

■ ■ In reviewing a probable cause determination in support of a warrant, the information we may consider is the information that was available to the issuing magistrate. *State v. Murray*, 110 Wn.2d 706, 709-10, 757 P.2d 487 (1988); *State v. Estorga*, 60 Wn. App. 298, 304, 803 P.2d 813,

---

[3]The record does not contain any findings of fact entered by the trial court at the conclusion of the bench trial.

[4]The parties have not presented any reason why we should treat this case differently because a federal as opposed to a state magistrate issued the warrant. We will, therefore, assume that the rules governing the issuance of a warrant are identical.

*review denied*, 116 Wn.2d 1027 (1991). The affidavit supporting a search warrant should be tested in a common-sense, practical manner and not hypertechnically. *Garcia*, 63 Wn. App. at 871.

■ ■ Whether information provided by an informant establishes probable cause for issuance of a search warrant is governed by the *Aguilar-Spinelli* 2-pronged test.[5] *State v. Jackson*, 102 Wn.2d 432, 440-43, 688 P.2d 136 (1984). First, the affidavit must establish the reliability or credibility of the informant, and second, the affidavit must establish the basis of knowledge, or how the informant obtained the information. *Jackson*, 102 Wn.2d at 435-37. Even if the information supplied by an informant fails to establish probable cause under this test, probable cause may still be established by an independent police investigation that corroborates the tip to such an extent that it supports the missing elements. *Maxwell*, 114 Wn.2d at 769; *Jackson*, 102 Wn.2d at 438. The investigation must "point to suspicious activities or indications of criminal activity along the lines suggested by the informant"; it cannot merely corroborate innocuous facts or details. *Maxwell*, 114 Wn.2d at 769; *Jackson*, 102 Wn.2d at 438.

Olson contends that the informant tip here failed the *Aguilar-Spinelli* test, and that the independent police investigation revealed only innocuous details consistent with lawful activity. The State concedes its failure to meet *Aguilar-Spinelli*, but asserts that an independent police investigation corroborated the informant's tip and established probable cause to support issuance of the search warrants for both premises that were searched.

---

[5]*Spinelli v. United States*, 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969); *Aguilar v. Texas*, 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964). Although the United States Supreme Court has abandoned this 2-pronged test in favor of a totality of the circumstances test, *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983), the State of Washington adheres to the *Aguilar-Spinelli* test under Const. art. 1, § 7. *State v. Jackson*, 102 Wn.2d 432, 440-43, 688 P.2d 136 (1984).

## A

### Probable Cause for 12295 Madrona

█ When an officer who is trained and experienced in marijuana detection actually detects the odor of marijuana, this by itself provides sufficient evidence to constitute probable cause justifying a search. *State v. Huff*, 64 Wn. App. 641, 647-48, 826 P.2d 698, *review denied*, 119 Wn.2d 1007 (1992); *State v. Hammond*, 24 Wn. App. 596, 598-99, 603 P.2d 377 (1979); *State v. Compton*, 13 Wn. App. 863, 865-66, 538 P.2d 861 (1975). Here, a DEA special agent and two WSPNS detectives detected the odor of marijuana emanating from the brick building and mobile home at 12295 Madrona. In his affidavit, DEA Agent Moss stated that one of the WSPNS detectives was "familiar with the odor of growing marijuana and [had] participated in the seizure of indoor grows", and the other detective had been "involved with approximately 60 investigations" where marijuana was seized. Moss also attested to his own training and experience involving the "detection" of marijuana.

█ In addition, the officers indicated to the magistrate that there was increased power usage at 12295 Madrona. While this fact does not, standing alone, provide sufficient probable cause to support a search warrant, *State v. Sterling*, 43 Wn. App. 846, 851-52, 719 P.2d 1357, *review denied*, 106 Wn.2d 1017 (1986), it is additional evidence that supports the probable cause determination of the magistrate. In short, the independent police investigation corroborated the informant's tip to the extent that it can be said that probable cause existed for issuance of the warrant to search the buildings at 12295 Madrona.

## B

### Probable Cause For 11452 Fairview

The State contends that there was also probable cause to support issuance of a warrant to search the buildings at 11452 Fairview, the residence of David Olson. In our judgment, the magistrate abused his discretion in issuing this warrant based on the information presented in the affidavit. The

principal piece of evidence supporting the issuance of this warrant was Moss's statement, which he based on his training and experience, that individuals who cultivate marijuana commonly "hide marijuana, the proceeds of marijuana sales, and records of marijuana transactions in secure locations, 'safe house' or within the premises under their control . . . not only for ready access, but also to conceal them from law enforcement personnel".

An officer's belief that persons who cultivate marijuana often keep records and materials in safe houses is not, in our judgment, a sufficient basis for the issuance of a warrant to search a residence of a person connected to the grow operation. If we adopted the position urged on us by the State we would be broadening, to an intolerable degree, the strict requirements that there be probable cause to believe that evidence of a crime will be discovered at a certain location. We conclude that, standing alone, an officer's belief that grow operators hide evidence at other premises under their control does not authorize a warrant to search those places.

The State points to the additional fact that David Olson was present in the brick building at 12295 Madrona, the location of the marijuana grow operation, for 30 minutes on July 24, 1991, and the fact that Olson's car was later seen parked at 11452 Fairview. Those facts, however, are merely innocuous details, and do not provide support for a probable cause determination.

### III

#### SUFFICIENCY OF THE EVIDENCE

We next consider whether there was sufficient evidence to support Olson's conviction of the manufacture of marijuana.[6] The standard of review is "whether, after viewing the evidence in the light most favorable to the prosecu-

---

[6]Although Olson appealed the denial of his *Knapstad* motion, a denial of that motion is not appealable after a trial is conducted. *State v. Zakel*, 61 Wn. App. 805, 811 n.3, 812 P.2d 512 (1991), *aff'd on other grounds*, 119 Wn.2d 563, 834 P.2d 1046 (1992). The *Knapstad* motion merges into the trial. However, we will consider Olson's appeal of the denial of that motion as a challenge to the sufficiency of the evidence. The standards of review for both are similar.

tion, *any rational trier of fact* could have found the essential elements of the crime *beyond a reasonable doubt.*" *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980). The defendant admits the truth of the State's evidence as well as all reasonable inferences that can be drawn. *State v. Porter,* 58 Wn. App. 57, 60, 791 P.2d 905 (1990).

In determining if the evidence was sufficient to support the conviction, we will not rely on the evidence seized by the authorities at 11452 Fairview. That evidence, as we have already observed, was seized as the result of an invalid warrant. The State, therefore, must rely solely on the evidence it submitted in response to the *Knapstad* motion relating to activities at 12295 Madrona, to support Olson's conviction of the charge of manufacturing marijuana. Even if the trial court erroneously considered the evidence obtained from 11452 Fairview to support Olson's conviction, that error is harmless if we are convinced beyond a reasonable doubt that any reasonable trier of fact would have reached the same result after considering the remaining untainted evidence. *See State v. Guloy,* 104 Wn.2d 412, 425, 705 P.2d 1182 (1985) (adopting constitutional harmless error test), *cert. denied,* 475 U.S. 1020 (1986).

The remaining untainted evidence disclosed that Olson was observed visiting 12295 Madrona, the location of the marijuana grow operation, on two occasions. On one occasion, the detectives and agents conducting the surveillance of 12295 Madrona observed Olson approach the brick building on the premises, bend down to pick up a container, produce a key from underneath the container, and use that key to open a padlock on the door to the brick building. Olson then entered the building and remained inside that building, which contained the grow operation, for 30 minutes. In addition, Olson's fingerprints were found on several items connected to the grow operation inside the building. Although Olson did not own the Madrona Drive property, he admitted that he was the owner of the mobile home located at the property. Viewed in the light most favorable to the State, this evidence was sufficient to estab-

lish that David Olson knowingly participated in the grow operation in the brick building. Furthermore, we conclude that the trial court's consideration of the invalid evidence was harmless, as that evidence was miniscule compared with Olson's connection to the grow operation at 12295 Madrona.

Affirmed.

MORGAN, C.J., and SEINFELD, J., concur.

Reconsideration denied April 21, 1994.

Review denied at 124 Wn.2d 1029 (1994).